**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| XR COMMUNICATIONS, LLC dba VIVATO TECHNOLOGIES,<br><br>                Plaintiff,<br><br>    v.<br><br>GOOGLE LLC,<br><br>                Defendant. | Case No.  6:21-cv-625-ADA<br><br>**PUBLIC VERSION** |

**GOOGLE LLC'S OPPOSED MOTION TO TRANSFER VENUE PURSUANT TO**
**28 U.S.C. § 1404(a) TO THE NORTHERN DISTRICT OF CALIFORNIA**

# TABLE OF CONTENTS

Page

FACTUAL BACKGROUND ..................................................................................................1

    **A.**    Google's Relevant Evidence And Witnesses Are In the NDCA, Not In The WDTX........................................................................................................................2

    **B.**    XR's Evidence And Witnesses Are Not In The WDTX........................................3

    **C.**    Many Relevant Third-Party Witnesses Are In Or Near California.........................3

LEGAL STANDARD.............................................................................................................5

**I.**    THE NDCA IS A CLEARLY MORE CONVENIENT FORUM THAN THE WDTX...................................................................................................................................6

    **A.**    XR Could Have Brought This Action In The NDCA............................................6

    **B.**    All Private Interest Factors Favor Transfer To The NDCA ..................................6

        **1.**    Cost of attendance for willing witnesses heavily favors transfer ..............6

        **2.**    Relative ease of access to sources of proof favors transfer ........................8

        **3.**    Availability of compulsory process favors transfer ...................................9

        **4.**    There are no practical problems with transferring this case .....................11

    **C.**    The Public Interest Factors Also Strongly Weigh In Favor Of Transfer.............12

        **1.**    NDCA has a strong local interest in this dispute .....................................12

        **2.**    Court congestion weighs in favor of transfer............................................13

        **3.**    The remaining public interest factors are neutral .....................................14

CONCLUSION......................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*10Tales, Inc. v. TikTok Inc.*,
No. 6:20-CV-00810-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021) ...................6, 7, 8

*Adaptix, Inc. v. HTC Corp.*,
937 F. Supp. 2d 867 (E.D. Tex. Mar. 28, 2013) .......................................9

*Correct Transmission LLC v. ADTRAN, Inc.*,
No. 6:20-CV-00669-ADA, 2021 WL 1967985 (W.D. Tex. May 17, 2021) ....................11, 13

*In re Adobe Inc.*,
823 F. App'x 929 (Fed. Cir. 2020) ...................................................8

*In re Apple, Inc.*,
581 F. App'x 886 (Fed. Cir. 2014) ..................................................10

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020).................................................8, 13

*In re Apple Inc.*,
No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ................................11

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017).....................................................6

*In re DISH Network L.L.C.*,
No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021).................................11

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009).................................................1, 6

*In re Google Inc.*,
No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ...............................12

*In re Google LLC*,
No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ............................6, 13

*In re Google LLC*,
No. 2021-171, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021)................................8, 9

*In re Google LLC*,
No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ...............................9

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009)................................................................12

*In re Hulu, LLC*,
   No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ......................................8

*In re Juniper Networks, Inc.*,
   No. 2021-160, 2021 WL 4343309 (Fed. Cir. Sept. 24, 2021) ................................14

*In re NetScout Sys., Inc.*,
   No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021)................................11

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir. 2009)................................................1, 5, 6, 13

*In re Samsung Elecs. Co.*,
   2 F.4th 1371 (Fed. Cir. 2021) ................................................6, 10, 11, 13

*In re Toyota Motor Corp.*,
   747 F.3d 1338 (Fed. Cir. 2014)................................................................5

*In re Tracfone Wireless, Inc.*,
   No. 2021-136, 852 F. App'x 537 (Fed. Cir. 2021) ................................12

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008)................................................13, 14

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ................................................................7, 8

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) (en banc) ................................................5, 7, 13

*Moskowitz Family LLC v. Globus Med.*,
   No. 6:19-cv-00672-ADA, 2020 U.S. Dist. LEXIS 145438 (W.D. Tex. July 2,
   2020) ................................................................12

*RPB Safety, LLC v. Tru-Vision Plastics, Inc.*,
   No. 6:18-CV-00367-ADA, 2019 WL 10349405 (W.D. Tex. Feb. 20, 2019)........................10

*Super Interconnect Techs. v. Google LLC*,
   6:21-cv-259-ADA, Dkt. 49 (W.D. Tex. Nov. 8, 2021)................................8

*W. Prop. Holdings, LLC v. Aequitas Cap. Mgmt., Inc.*,
   392 P.3d 770 (Or. App. 2017)................................................................5

*XR Commc'ns, LLC v. Amazon.com, Inc. et al.*,
   6:21-cv-00619-ADA, Dkt. 23 (W.D. Tex. Sept. 7, 2021) ......................................11

*XR Commc'ns, LLC v. Ruckus Wireless, Inc.*,
No. 18-cv-01992-WHO, 2021 WL 3918136 (N.D. Cal. Sept. 1, 2021) .................................12

## **Statutes**

28 U.S.C. § 1400(b) .........................................................................................................6

28 U.S.C. § 1404(a) ...............................................................................................1, 3, 5, 7

## **Other Authorities**

Fed. R. Civ. P. 45 ........................................................................................................9, 10

Google LLC ("Google") requests transfer of this action to the Northern District of California ("NDCA") under 28 U.S.C. § 1404(a) because the NDCA is a clearly more convenient forum for this lawsuit.

Plaintiff XR Communications, LLC ("XR") has no relevant connections to this District. In fact, XR is a Delaware limited liability company with a principal place of business in Venice, California. Moreover, a substantial number of relevant witnesses are located in California, including in the NDCA. For example, key Google personnel with knowledge about the technology, financials, and marketing of the accused products live and work in the NDCA. A substantial portion of the sources of proof are also created and maintained in the NDCA, at Google's headquarters. In addition, a number of relevant third parties, including employees of ███████████████████, which designs processors in the accused products that implement the accused functionality, as well as the prosecuting attorneys for the patents-in-suit, are also located in the NDCA and elsewhere in California. In contrast, the only potentially relevant witness located in the Western District of Texas ("WDTX") appears to be one of 11 named inventors of the patents-in-suit, who is not, according to XR, among the "key innovators in the wireless communication field."

Where, as here, "the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff," the case should be transferred. *In re Nintendo Co.,* 589 F.3d 1194, 1197 (Fed. Cir. 2009) (quoting *In re Genentech, Inc.,* 566 F.3d 1338, 1342 (Fed. Cir. 2009)).

## FACTUAL BACKGROUND

On June 16, 2021, XR filed this lawsuit against Google, alleging infringement of U.S. Patent Nos. 10,594,376 (the "'376 patent") and 10,715,235 (the "'235 patent"). For the '376 patent, XR accuses "Wi-Fi access points and routers supporting MU-MIMO, including without limitation access points and routers utilizing the IEEE 802.11ac standard," and specifically

identifies "Google Nest Wifi Router, Google Nest Wifi point, [and] Google Wifi" as infringing. Dkt. 1 ¶ 22.  According to XR, each of these products "is an apparatus for communication data on an IEEE 802.11ac data communications network."  *Id.* ¶ 24.  For the '235 patent, XR accuses "products supporting MU-MIMO technologies," and identifies "Google Nest Cam IQ Outdoor, Google Nest Cam IQ Indoor, Pixel 5, Pixel 4a (5G), Pixel 4a, Google Pixelbook Go, [and] Nest Hello Doorbell" as infringing. *Id.* ¶ 41.  Throughout its Complaint, XR relies on the IEEE 802.11ac standard to allege infringement of both patents.  *Id.* ¶¶ 25-30, 43-45; *see also id.* ¶ 47 (alleging inducement based on Google purportedly providing "instructions for using the '235 Accused Products . . . to utilize their 802.11ac beamforming and/or MU-MIMO functionalities").

## A.    Google's Relevant Evidence And Witnesses Are In the NDCA, Not In The WDTX

Google is headquartered in the NDCA (Mountain View, California), and the majority of its U.S. workforce is in the NDCA.  Rope Decl.[1] ¶ 3.  Google witnesses with relevant technical knowledge about the accused functionality in the accused products are located in the NDCA.  *Id.* ¶¶ 6-7, 12-13, 18-19, 24-25.  Google witnesses with relevant financial and marketing knowledge about the accused products are also located in and around the NDCA.  *Id.* ¶¶ 6, 9-12, 15-18, 21-24, 27-29.  Google's witness knowledgeable about Google's license agreements is also located in the NDCA. *Id.* ¶ 30.  As with the 11 identified Google witnesses, relevant technical, financial, and marketing documents for the accused products are also created and maintained by employees in and around the NDCA.  *Id.* ¶ 34; *see id.* ¶¶ 12, 18, 24.  None of these documents are created or maintained in WDTX.  *See id.* ¶¶ 31-34.  Although Google has offices in Austin, the parties have not identified any Google employees in the WDTX who are likely witnesses for technical, financial, or marketing issues for the accused products.  *Id.*

---

[1] "Rope Decl." refers to the Declaration of Andrew Rope, filed herewith.

## B.     XR's Evidence And Witnesses Are Not In The WDTX

XR is a Delaware company with its principal place of business in Venice, California.  Dkt. 1 ¶ 10.  XR purports to be a continuation of a company known as "Vivato," which XR alleges was founded in 2000.  Dkt. 1 ¶ 11.  The Vivato.com website shows only a corporate headquarters in Solana Beach, California and a business development office in New York, New York.  Lee Decl.[2] ¶ 4.  Similarly, the patents-in-suit, which issued in 2020, both identify XR in Solana Beach, California as "applicant."  Dkt. 1-1 at 1, 1-2 at 1.  During prosecution leading to the patents-in-suit, Kai Hansen acting for XR listed his residence as San Diego, California when he signed substitute statements in lieu of inventor oaths.  Lee Decl. ¶ 5, Ex. 4.  XR does not appear to have any connection to the WDTX and has not alleged that it has any such connection.  *See generally* Dkt. 1 ¶¶ 10-15.

## C.     Many Relevant Third-Party Witnesses Are In Or Near California

Third parties involved in the alleged invention, prosecution, and ownership of the patents-in-suit—such as the named inventors, prosecuting attorneys, and parties involved in patent valuation—are almost entirely located outside the WDTX.  Of the 11 named inventors of the patents-in-suit, based on public information, three reside in the NDCA, including Siavash Alamouti, whom the Complaint identifies as one of "several key innovators in the wireless communication field."  Dkt. 1 ¶ 11; Lee Decl. ¶¶ 6-8.  Six other named inventors also reside outside Texas, including four who are located in the Pacific Northwest in Washington, Portland, and British Columbia.  Lee Decl. ¶¶ 9-14.  Although at least one of the named inventors of the patents-in-suit, Marcus Da Silva, appears to reside in the WDTX, neither he nor the remaining named

---

[2] "Lee Decl." refers to the Declaration of Nicholas Lee in Support of Google LLC's Opposed Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) to the Northern District of California, filed herewith.

inventor[3] is listed among the "key innovators" identified in the Complaint.  *See* Lee Decl. ¶ 15; Dkt. 1 ¶ 11.  The two prosecuting attorneys for the patents-in-suit also reside in California.  Lee Decl. ¶¶ 16-17.  In addition, Ken Biba, the former CEO of Vivato whom XR alleges is one of "several key innovators in the wireless communication field" (Dkt. 1 ¶ 11) is located in San Francisco, in the NDCA.  Lee Decl. ¶ 18.

Moreover, Google's suppliers of the chips that implement the accused IEEE 802.11ac standard in the accused products are nonparties ███████████████████████████ ██████████████████████████ Rope Decl. ¶¶ 8, 14, 20, 26.  ████████████████████ ██████████, California, and the majority of Google's primary points of contact for the ██████████ chips used in Google's accused products are based in San Jose, California, located in NDCA.  *Id.* ¶¶ 8, 20; Lee Decl. ¶ 19.  ██████████████████████████, California, in the NDCA, and Google's primary points of contact for the relevant chips are two ████████ employees in the NDCA. *Id.* ¶ 20; Rope Decl. ¶ 14.  ████████████████████████ California, also within the NDCA.  Lee Decl. ¶ 21.  Details concerning the operations of these chips are known to their respective manufacturers, ██████████████████ ██ █████, but not to Google.  Rope Decl. ¶¶ 8, 14, 20, 26.

Finally, individuals knowledgeable about the valuation of the patents-in-suit are located in or near California.  Both patents-in-suit claim priority as divisional applications from Application No. 10/700,329 (the "'329 Application").  Dkt. 1-1 at 2, 1-2 at 2.  The portfolio including the '329 Application served as security for a loan by Aequitas Capital Management ("Aequitas") to Vivato Networks, Inc.  Lee Decl. ¶ 22, Ex. 21 at Frame 0712 (identifying '329 Application).  A group of

---

[3] Google has been unable to verify the location of named inventor Bobby Jose, whose residence on the patents-in-suit is given as Veradale, Washington.

investors associated with Vivato Networks formed Western Property Holdings, LLC ("Western Property") to help finance the loan. Lee Decl. ¶ 23, Ex. 22 ¶ 4. Aequitas foreclosed on that loan, and the patents were sold at a "sheriff's sale" to XR. *See W. Prop. Holdings, LLC v. Aequitas Cap. Mgmt., Inc.*, 392 P.3d 770, 773-74 (Or. App. 2017). Western Property subsequently sued Aequitas due to, *inter alia*, the allegedly low value of the sale. *Id*. at 774. Individuals associated with Western Property, who have knowledge at least about the valuation of Vivato's patent portfolio, are located in California, including Michael J. Haycox and Chris Thomas, who is located in the NDCA. Lee Decl. ¶ 24. Ron Chaffee, also located in California, was the CEO of Vivato at the time of that lawsuit and has knowledge about the valuation of Vivato's portfolio. Lee Decl. ¶ 25.

## LEGAL STANDARD

To evaluate transfer under 28 U.S.C. § 1404(a), courts first consider "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). If so, courts weigh eight private interest and public interest factors:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive[;] … [5] the administrative difficulties flowing from court congestion; [6] the local interest in having localized interests decided at home; [7] the familiarity of the forum with the law that will govern the case; and [8] the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* at 315 (internal citations and quotation marks omitted).

The proposed transferee forum is "clearly more convenient" where, as here, most potential witnesses and relevant evidence are concentrated in the transferee district. *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014); *see also Nintendo*, 589 F.3d at 1198-200. The determination is not whether the "transferee forum is *far* more convenient." *Toyota*, 747 F.3d at

1341 (emphasis in original).  Nor does plaintiff's choice of venue carry any weight.  *Nintendo*, 589 F.3d at 1200.  "Courts may consider undisputed facts outside the pleadings, but must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party."  *10Tales, Inc. v. TikTok Inc.*, No. 6:20-CV-00810-ADA, 2021 WL 2043978, at *2 (W.D. Tex. May 21, 2021) (citations omitted).

## I.    THE NDCA IS A CLEARLY MORE CONVENIENT FORUM THAN THE WDTX

### A.    XR Could Have Brought This Action In The NDCA

As XR admits, Google's principal place of business is in Mountain View, California, in the NDCA.  *See* Dkt. 1 ¶ 16.  Thus, XR could have filed this lawsuit in the NDCA, where Google has a "regular and established place of business."  28 U.S.C. § 1400(b); *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).  Accordingly, the transfer analysis turns on weighing the private and public interest factors.

### B.    All Private Interest Factors Favor Transfer To The NDCA

The private factors strongly favor transfer to the NDCA because it is more convenient for all Google witnesses and the vast majority of third-party witnesses.  Moreover, the NDCA has subpoena power over significant third-party witnesses in California.  In contrast, other than the presence of one non-"key" inventor, this case has no connection to the WDTX.

#### 1.    Cost of attendance for willing witnesses heavily favors transfer

The "single most important factor in [the] transfer analysis" is the convenience and cost for witnesses to travel and attend trial.  *Genentech, Inc.*, 566 F.3d at 1343 (citation omitted).  The analysis "must consider" the convenience of "possible party witnesses."  *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021); *see also In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) ("While it is true that the witnesses in the Northern District of California are largely affiliated with the parties, that does not negate the inconvenience and cost

to those individuals to travel a significant distance to testify.").  Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004) ("*Volkswagen I*").  However, witnesses that reside distant from either California or WDTX "will be inconvenienced by extensive travel regardless of the forum and thus the '100-mile' rule should not be rigidly applied." *10Tales*, 2021 WL 2043978, at *4 (citation omitted).

This factor strongly favors transfer to the NDCA.  Google's key employees with relevant technical, financial, and marketing knowledge of the accused products, as well as Google personnel with knowledge of Google's patent licenses, are all in or around the NDCA.  Rope Decl. ¶¶ 5-7, 9-13, 15-19, 21-25, 27-30; *see 10Tales, Inc.*, 2021 WL 2043978, at *3 ("[T]his Court has previously recognized Google's strong presence in the NDCA.").  These include at least the four key engineers for the accused products, specifically identified in the Rope Declaration, as well as the seven key employees with substantial marketing or financial knowledge of the accused products, or of Google's licenses.  For these likely witnesses, "it is more convenient [] to testify at home" in the NDCA. *See Volkswagen II*, 545 F.3d at 317.  There is no direct flight from the Bay Area to Waco.  Traveling to Waco from the Bay Area requires nearly five hours of flight time (including a layover in Dallas), not including time spent traveling to and from and waiting at the airport.  Lee Decl. ¶ 26.  The long trips and overnight stays in Waco will lead to lost productivity and disruption to the witnesses' lives while "being away from work, family, and community." *Volkswagen II*, 545 F.3d at 317.  By contrast, if this case were transferred to the NDCA, Google employees could readily travel back and forth between court and their homes—a "30 minutes [to] an hour" commute—as compared to traveling "five or six hours one-way" by plane to Waco. *See*

*Volkswagen I*, 371 F.3d at 205 ("[T]he task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.").  Although one relevant Google employee is based in Kirkland, Washington, travel between there and the NDCA is far shorter than to Waco.  Lee Decl. ¶¶ 27-28.

Transfer is thus appropriate because Google has "identified a significant number of its own employees as potential witnesses who reside in the [NDCA]."  *In re Adobe Inc.*, 823 F. App'x 929, 931 (Fed. Cir. 2020); *see also In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *4 (Fed. Cir. Oct. 6, 2021) (factor weighs in favor of transfer to NDCA despite witness residing in Texas); *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *5 (Fed. Cir. Aug. 2, 2021) (finding in favor of transfer where an "overwhelming number of potential witnesses from Hulu [were] in or near California compared to the two from SITO in Texas").  This most important factor strongly favors transfer.[4]

### 2.     Relative ease of access to sources of proof favors transfer

As this Court has noted, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."  *10Tales*, 2021 WL 2043978, *at* *2 (citing *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020)).  Here, the relevant sources of proof were created and maintained in the NDCA or elsewhere on the West Coast, and therefore more easily accessed from

---

[4] The convenience of relevant third-party witnesses in and around the NDCA, identified above, would weigh further in favor of transfer.  These include, for example, three named inventors in the NDCA and six other named inventors elsewhere in the Pacific Northwest, for whom the NDCA is more convenient than the WDTX.  However, as Google does not currently know whether any are willing witnesses, it has discussed such third-party witnesses only in connection with the availability of compulsory process factor, below.  *See Super Interconnect Techs. v. Google LLC*, 6:21-cv-259-ADA, Dkt. 49 at 6 (W.D. Tex. Nov. 8, 2021).

the NDCA than the WDTX. *See In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021) (finding district court erred in not "considering the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval").  Google's technical, financial, and marketing documents relevant to the accused products are created and maintained by employees located in or near Google's Mountain View headquarters. *See* Rope Decl. ¶¶ 12, 18, 24, 34.  Google is not aware of any key witnesses in the WDTX who maintain documents concerning the research, development, marketing, financials, or pre-suit discussion for the accused products.  *See id.* ¶¶ 31-33.  Further, key third-party documentary evidence is located in California, such as ███████████████████████ documents. *Id.* ¶¶ 8, 14, 20, 26.

In contrast, Google is unaware of relevant sources of proof in the WDTX.  Indeed, XR does not appear to conduct any business activities in this District.  *Supra* at p. 3.  This factor thus favors transfer.  *See In re Google LLC*, 2021 WL 4592280, at *6-7 (finding in favor of transfer where no sources of proof were present in WDTX, but "a significant number of documents" were "created and are maintained" in the NDCA); *In re Google LLC*, 2021 WL 5292267, at *2 (finding in favor of transfer where "relevant documents were created and maintained by Google in the [NDCA]").

### 3.    Availability of compulsory process favors transfer

"Transfer is favored" where, as here, a transferee district like the NDCA, "has absolute subpoena power over a greater number of non-party witnesses."  *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. Mar. 28, 2013).  A court may subpoena a person (a) within 100 miles of where a person resides or works, or (b) within the state when the witness is a party, an officer of the party, or would not incur substantial expense to attend trial.  Fed. R. Civ. P. 45(c)(1).

Here, Google has identified 13 witnesses who are within the subpoena power of the NDCA, but not the WDTX.  First, at least eight material third-party witnesses are located in the NDCA, including three individuals from ████████████████ three named inventors of the patents-in-suit, the former CEO of Vivato, Ken Biba, and Chris Thomas, an individual knowledgeable about the valuation of Vivato's patent portfolio.  *See supra* at pp. 3-5.  Moreover, ████ which has unique knowledge of the accused technology, is headquartered in the NDCA.  *See In re Samsung*, 2 F.4th at 1379 ("[B]ecause these potential witnesses reside in Northern California, transfer ensures that the transferee court could compel these individuals to appear.").   In addition, five third-party witnesses are located elsewhere in California, within the subpoena power of the NDCA, including one individual from ██████, the two prosecuting attorneys of the patents-in-suit, and two individuals knowledgeable about patent valuation, Michael J. Haycox and Ron Chaffee.  Rope Decl. ¶ 20; Lee Decl. ¶¶ 16-17, 24-25.  Given the frequent, inexpensive, and relatively short flights to the NDCA from other parts of the state, these witnesses would not incur substantial expense to attend.  *E.g.*, Lee Decl. ¶¶ 29-31.  "Regardless, '[w]hen travel over 100 miles could impose substantial expense on [ ] witness[es], the party that served the subpoena may pay that expense and the court can condition enforcement of the subpoena on such payment.'" *RPB Safety, LLC v. Tru-Vision Plastics, Inc.*, No. 6:18-CV-00367-ADA, 2019 WL 10349405, at *4 (W.D. Tex. Feb. 20, 2019) (quoting Fed. R. Civ. P. 45(c)(1)(B)(ii) advisory committee note to 2013 amendment). In contrast, the WDTX would have subpoena power only over one of the 11 named inventors of the patents-in-suit (who may be a willing witness).

Thus, this factor heavily favors transfer.  *See In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014) ("This factor will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue.").

### 4.       There are no practical problems with transferring this case

"[T]his Court has previously held that the last private interest factor favors transfer when most witnesses are present in the transferee forum and the plaintiff has no presence in the Western District." *Correct Transmission LLC v. ADTRAN, Inc.*, No. 6:20-CV-00669-ADA, 2021 WL 1967985, at *5 (W.D. Tex. May 17, 2021).  Due to the majority of potential Google witnesses being in the NDCA, and the fact that XR has no presence in WDTX, this factor also favors transfer.

Further, that XR filed other cases in the WDTX involving common patents-in-suit does not weigh against transfer.[5]  *In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021) (rejecting that "the mere co-pendency" of cases "in a particular district automatically tips the balance in the non-movant's favor"); *see also In re Apple Inc.,* No. 2021-181, 2021 WL 5291804, at *4 (Fed. Cir. Nov. 15, 2021) (where co-pending "suit involves different defendants and different accused products," it is likely to involve "significantly different discovery, evidence, proceedings, and trial" and therefore "any 'incremental gains in keeping [this] case in the Western District of Texas' are insufficient 'to justify overriding the inconvenience to the parties and witnesses'") (citing *In re Samsung*, 2 F.4th at 1380); *In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *1, 3-4 (Fed. Cir. Oct. 21, 2021) (ordering transfer, despite four co-pending suits accusing other set-top box providers of infringing the same patents, because "any judicial economy considerations in keeping this case in Texas are insufficient to outweigh" the other factors).  Notably, no schedule has been set yet in the WDTX and this Court has not had the opportunity or need to analyze the patents-in-suit.  In contrast, the NDCA recently issued a claim construction order involving XR's patent, U.S. Patent No. 6,611,231 (the "'231 patent").

---

[5] In addition, defendant eero LLC has moved to dismiss for improper venue or, in the alternative, transfer to the NDCA. *XR Commc'ns, LLC v. Amazon.com, Inc. et al.*, 6:21-cv-00619-ADA, Dkt. 23 (W.D. Tex. Sept. 7, 2021).

*See XR Commc'ns, LLC v. Ruckus Wireless, Inc.*, No. 18-cv-01992-WHO,  2021 WL 3918136 (N.D. Cal. Sept. 1, 2021) (case presently on appeal).  While the '231 patent is not in the same family as the patents-in-suit, it involves overlapping inventors and related technology.  Regardless, considerations of judicial economy should not be dispositive in these circumstances, particularly where the center of gravity for relevant Google witnesses and evidence is in its Northern California headquarters.  *See In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017) (judicial economy cannot "dominate the analysis" where defendant "has a strong presence in the transferee district").

This factor also "considers problems such as those rationally based on judicial economy which will weigh heavily in favor of or against transfer."  *Moskowitz Family LLC v. Globus Med.*, No. 6:19-cv-00672-ADA, 2020 U.S. Dist. LEXIS 145438, at *14 (W.D. Tex. July 2, 2020).  So far in this case, as previously noted, no schedule has been entered; Google only recently answered the Complaint; and no other motions have been filed.

Therefore, overall, this factor favors transfer.

**C.     The Public Interest Factors Also Strongly Weigh In Favor Of Transfer**

**1.     NDCA has a strong local interest in this dispute**

The NDCA has a strong local interest in this case, "because the cause of action calls into question the work and reputation of several individuals residing in or near that district."  *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).  Google was founded and maintains its headquarters and largest offices in the NDCA, designed the accused products there, and its personnel, documentary records, and ongoing activities relating to the accused products are primarily in the NDCA.  *Supra* at p. 2.  The strong connection of the accused instrumentalities to the NDCA means that it has a "far stronger local interest in the case than the Western District of Texas."  *In re Tracfone Wireless, Inc.*, No. 2021-136, 852 F. App'x 537, 540 (Fed. Cir. 2021); *see*

*also In re Google*, 2021 WL 4427899, at *6 (factor weighs "strongly in favor of transfer" where "the accused products were designed and developed in the transferee venue and are not related to Google's presence in Texas");  *In re Samsung*, 2 F.4th at 1380 (NDCA has "a legitimate interest in adjudicating the cases 'at home,'" where the accused products were accused of infringing the asserted patents based on applications that were designed and developed in the NDCA).  In addition, this Court has previously held that "the district where a party has its principal place of business typically has a stronger local interest in the adjudication of the case."  *Correct Transmission*, 2021 WL 1967985, at *6 (citations omitted); *see also In re Apple*, 979 F.3d at 1345 (transfer appropriate despite Apple's "general presence in WDTX"). The fact that Google makes its services and products available nationally does not establish an interest in having the case tried here.  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008).

By contrast, this District has no interest in this case.  XR is not based in this District and does not appear to conduct business here.  Moreover, XR's infringement allegations in its Complaint (*see, e.g.*, Dkt. 1 ¶¶ 20-54) have no connection to the WDTX that could not also be drawn to any other district.  *See Volkswagen II*, 545 F.3d at 318 (noting these types of connections "could apply virtually to any judicial district or division in the United States; it leaves no room for consideration of those actually affected—directly and indirectly—by the controversies and events giving rise to a case"); *see also Nintendo*, 589 F.3d at 1198.

Because the NDCA has a strong local interest in this case, this factor favors transfer.

### 2.    Court congestion weighs in favor of transfer

Approximately 25% of all patent cases filed in 2021 have been filed in the WDTX,[6] and recent data from Docket Navigator (available at https://search.docketnavigator.com/patent/search)

---

[6] *See* Ryan Davis, WDTX Now Has 25% of All US Patent Cases, Law360 (July 2, 2021), https://www.law360.com/articles/1400052.

shows that 856 patent cases have been filed in the WDTX so far in 2021, compared with 153 patent cases filed in the NDCA.  Lee Decl. ¶¶ 32-33.  In fact, the WDTX has seen an increase of 2,740 total pending cases over the last year, while the NDCA has seen an increase of 1,984 cases over the same time period.[7]  Notably, according to Docket Navigator, this Court alone presides over 821 patent cases filed in the WDTX this year, while the 153 NDCA cases are spread across 12 District Court Judges as well as Magistrate Judges.  Lee Decl. ¶¶ 32-33.  The time to disposition for civil cases in the NDCA is 7.6 months in the NDCA, which is slightly ahead of 7.7 months in the WDTX.[8]  Thus, this factor favors transfer.[9]

### 3.     The remaining public interest factors are neutral

Familiarity with the governing law is neutral, as both the NDCA and the WDTX are well versed in patent law.  *TS Tech*, 551 F.3d at 1320.  And because there is no prospect for any conflict of laws, the last public interest factor is also neutral.

## <u>CONCLUSION</u>

The Court should transfer the case to the NDCA, a clearly more convenient venue for this litigation.

---

[7] *See* U.S. District Courts-Combined Civil and Criminal Federal Court Management Statistics (June 30, 2021), https://www.uscourts.gov/sites/default/files/data_tables/ fcms_na_distprofile0630.2021.pdf ("2021 Court Management Statistics").

[8] *See* 2021 Court Management Statistics.

[9] The Federal Circuit recently observed that "the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics."  *In re Juniper Networks, Inc.*, No. 2021-160, 2021 WL 4343309, at *6 (Fed. Cir. Sept. 24, 2021). Thus, to the extent this does not favor transfer outright, at a minimum it is neutral.

Dated: November 24, 2021

Respectfully submitted,

*/s/ Barry K. Shelton*
Barry K. Shelton
SHELTON COBURN LLP
311 RR 620 S
Suite 205
Austin, TX 78734-4775
512-263-2165
Fax: 512-263-2166

Michael A. Berta (*pro hac vice*)
michael.berta@arnoldporter.com
Bonnie Phan (*pro hac vice*)
bonnie.phan@arnoldporter.com
ARNOLD & PORTER
KAYE SCHOLER LLP
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Tel: 415-471-3100
Fax: 415-471-3400

Nicholas H. Lee (*pro hac vice*)
nicholas.lee@arnoldporter.com
ARNOLD & PORTER
KAYE SCHOLER LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-5844
Tel: 213-243-4000
Fax: 213-243-4199

Paul I. Margulies (*pro hac vice*)
paul.margulies@arnoldporter.com
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Tel: 202-942-5000
Fax: 202-942-5999

Michael D.K. Nguyen (*pro hac vice*)
michael.nguyen@arnoldporter.com
ARNOLD & PORTER
KAYE SCHOLER LLP

3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807
Tel: 650-319-4500
Fax: 650-319-4700

*Attorneys for Defendant Google LLC*

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(g), beginning on October 12, 2021, the parties conferred in a good-faith effort to resolve the matter by agreement.  Plaintiff confirmed on October 22, 2021 that it opposes the relief sought.  Accordingly, the matter is submitted to the Court for resolution.

*/s/ Barry K. Shelton*
Barry K. Shelton


## **CERTIFICATE OF SERVICE**

This is to certify that on November 24, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and served such filing to all counsel of record via e-mail.

*/s/ Barry K. Shelton*
Barry K. Shelton