## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |
|---|---|
| **XR COMMUNICATIONS, LLC d/b/a VIVATO TECHNOLOGIES,** <br> Plaintiff, <br><br> *v.* <br><br> **GOOGLE LLC,** <br> Defendant. | **6:21-cv-00625-ADA** |

## <u>MEMORANDUM OPINION & ORDER</u>

Came on for consideration this date is Defendant Google LLC's ("Google" or "Defendant") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) to the Northern District of California filed on November 24, 2021. ECF No. 23 (the "Motion"). Plaintiff XR Communications, LLC, d/b/a Vivato Technologies ("Vivato" or "Plaintiff") filed an opposition on March 10, 2022, ECF No. 33, to which Google filed a reply on March 24, 2022, ECF No. 34. After careful consideration of the Motion, the parties' briefs, and the applicable law, the Court **GRANTS** Google's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

### I. BACKGROUND

On June 16, 2021, Vivato sued Google, alleging infringement of U.S. Patent Nos. 10,594,376 (the "'376 Patent") and 10,715,235 (the "'235 Patent") (collectively, the "Asserted Patents"). ECF No. 1 (the "Complaint"). Vivato is a Delaware corporation with its principal place of business in Venice, California. *Id.* ¶ 10. Google is a Delaware limited liability company with its principal place of business in Mountain View, California. *Id.* ¶ 16. According to Vivato's Complaint, Google products infringe the Asserted Patents by supporting multi-user, multiple-input, multiple-output ("MU-MIMO") technologies and utilizing the IEEE 802.11ac Wi-Fi standard. *Id.* ¶¶ 22, 41. For the '376 Patent, Vivato identifies the Google Nest Wi-Fi Router,

Google Nest Wi-Fi Point, and Google Wi-Fi as infringing. *Id*. ¶ 22. For the '235 Patent, Vivato identifies three groups of products as infringing. First, the Google Nest Cam IQ Outdoor, Google Nest Cam IQ, and Nest Hello Doorbell Indoor (collectively the "Accused Nest Video Products"). *Id*. ¶ 41. Second, the Pixel 5, Pixel 4a (5G), and Pixel 4a. *Id*. And third, the Google Pixelbook Go. *Id*. The Court will refer to all these products as the "Accused Products."

Vivato filed seven separate cases in this District all asserting infringement of the '235 Patent. ECF No. 50 at 7. *See XR Commc'ns LLC v. Amazon.com, Inc. et al.*, No. 6:21-CV-00619-ADA (W.D. Tex. June 16, 2021); *XR Commc'ns LLC v. ASUSTeK Comput. Inc.*, No. 6:21-CV-00622-ADA (W.D. Tex. June 16, 2021); *XR Commc'ns LLC v. Samsung Elecs. Co., LTD et al.*, No. 6:21-CV-00626-ADA (W.D. Tex. June 16, 2021); *XR Commc'ns LLC v. Dell Techs. Inc. et al.*, No. 6:21-CV-00646-ADA (W.D. Tex. June 22, 2021); *XR Commc'ns LLC v. Apple, Inc.*, No. 6:21-CV-00620-ADA (W.D. Tex. June 16, 2021); *XR Commc'ns LLC v. Microsoft Corp.*, No. 6:21-CV-00695-ADA (W.D. Tex. July 1, 2021); *XR Commc'ns LLC v. HP Inc.,* No. 6:21-CV-00694-ADA (W.D. Tex. July 1, 2021). Vivato has also filed an additional case for related patents with overlapping inventors. *See XR Commc'ns LLC v. Cisco Sys., Inc. et al.*, No. 6:21-CV-00623-ADA (W.D. Tex. June 16, 2021).

On November 24, 2021, Google filed its Motion under 28 U.S.C. § 1404(a), seeking transfer to the Northern District of California (the "NDCA"). ECF No. 23. That Motion is now ripe for judgement.

## II. LEGAL STANDARD

In patent cases, regional circuit law governs motions to transfer under § 1404(a). *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Section 1404(a) provides that, "or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or

division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought in the [transfer] destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious[,] and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *See Burbank Int'l Ltd. v. Gulf Consol. Int'l Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977). A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and

witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).

The moving party has the burden to prove that a case should be transferred for convenience. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-00118-JRG, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show an individual factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

### III. ANALYSIS

#### A.      Venue and Jurisdiction in the Transferee Forum

To satisfy § 1404(a)'s preliminary question, the movant must show that venue and jurisdiction would have been proper in the transferee forum when the plaintiff filed suit. *See Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-00876-ADA, 2022 WL 958384, at *5 (W.D. Tex. Mar. 25, 2022). This Court finds, and the parties do not contest, that Vivato could have brought this Action in the NDCA. *See* ECF No. 23 at 6; ECF No. 33 at 3.

#### B.      Private Interest Factors

##### 1.      Cost of Attendance of Willing Witnesses

The Fifth Circuit established the "100-mile rule," which provides that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than

4

100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. Yet the Federal Circuit has refused to apply the rule "rigidly," such as where it may "result in all identified witnesses having to travel away from their home and work in order to testify in Texas, which would 'produce results divorced from' the rule's underlying rationale." *In re Google LLC*, No. 2021-170, 2021 U.S. App. LEXIS 29137, at \*14 (Fed. Cir. Sept. 27, 2021) (quoting *In re TracFone Wireless, Inc.*, 852 F. App'x 537, 539 (Fed. Cir. 2021)). This has led the Federal Circuit to disregard distance altogether in favor of considering travel-time statistics. *See, e.g.*, *id.* at \*12 ("[T]ime is a more important metric than distance."). Or to simply disregard any difference in convenience between the relevant fora where it is comfortable concluding that a witness would have to travel a significant distance regardless of whether the court transfers the action or not. *See In re Apple Inc.*, 979 F.3d at 1342 (discussing witnesses traveling from New York to either Texas or California venues); *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (stating that the 100-mile rule should not be, "rigidly," applied in the context of foreign witnesses); *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at \*6 (Fed. Cir. Oct. 13, 2021). It has even gone as far as opining that "[t]he comparison between the transferor and transferee forum is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014); *In re Google*, 2021 U.S. App. LEXIS 29137, at \*12.

The Court holds that this factor heavily favors transfer because of the number of relevant Google personnel in the NDCA.

### a. West Coast Google Personnel

Google argues this factor favors transfer because "Google's key employees" with knowledge relevant to the Accused Products are in or around the NDCA or Washington state. ECF

No. 32 at 7. In support of this argument, Google provides a declaration from Andrew Rope, a Senior Legal Project Manager on the Discovery Legal Team at Google in the NDCA. ECF No. 23-1 (the "Rope Declaration") ¶ 1. Mr. Rope testifies that "[d]ecisions related to Google's overall business are made by managers and other employees based in Northern California, including most significant engineering, sales, and marketing decisions related to the Accused Products." *Id.* ¶ 5.

Mr. Rope first specifies four NDCA-based Google engineers with knowledge of the Accused Products. *Id.* ¶¶ 6, 12, 18, 24. He lists ███████████████████████████████ ███████████ as having relevant knowledge of the technical aspects of the Accused Wi-Fi Products. *Id.* ¶ 7. He names ████████████████████████████ with knowledge of "the technical aspects of the Accused Nest Video Products, including their implementation of the IEEE 802.11ac standard." *Id.* ¶ 13. Mr. Rope identifies ████████████████████████████ ██████, as having technical knowledge of the Accused Pixel Phones. *Id.* ¶ 19. And for the Pixelbook Go, Mr. Rope names ██████████████████████████ ████████ with technical knowledge related to the Pixelbook Go product. *Id.* ¶ 25.

Mr. Rope next lists six Google employees with knowledge of marketing and financial aspects of the Accused Products that are based in or around San Francisco or Kirkland, Washington. *Id.* ¶¶ 9, 15, 21, 27. The Rope Declaration indicates that ████████████████████ ████████████████████████████████████, has knowledge of the marketing, business, and promotion of the Accused Wi-Fi Products. *Id.* ¶ 9. It also names ████████████████████████████, as having knowledge of the marketing, promotion, and business information of the Accused Nest Video Products. *Id.* ¶ 16. The Rope Declaration further states that ██████████████████████████ ██████, has marketing-related knowledge of the Accused Pixel Phones. *Id.* ¶ 22. For the Pixelbook

Go, the Rope Declaration names ███████████████████████████████, as a witness with knowledge of relevant marking information. *Id.* ¶ 28. Mr. Rope also lists ██████ ████████████████████████████████ *Id.* ¶ 23. Finally, Mr. Rope lists ███████ ███████████████████████, to have "knowledge regarding Google's financial data and statements, accounting, and record keeping" related to the Accused Wi-Fi Products, the Accused Nest Video Products, and the Pixelbook Go product. *Id.* ¶¶ 11, 17, 29.

Finally, Mr. Rope testifies that ██████████████████████████████████ ███████████████████████████████████████████████. *Id.* ¶ 30.

In the Court's judgment, the Rope Declaration establishes that these eleven named witnesses possess relevant and material knowledge for whom the NDCA would be a more convenient venue. Vivato objects on several unconvincing grounds: that this factor focuses on nonparty witnesses; that Google is accustomed to having its personnel testify remotely; and that Google's witnesses are irrelevant in view of Google's own admission that ████████████████ with the relevant technical knowledge.

First, Vivato contends that this this factor "primarily relates to the inconvenience placed on *nonparty* witnesses—not party witnesses." ECF No. 33 at 7 (citing *Jenam Tech, LLC v. Google LLC*, No. 6-20-CV-00453-ADA, 2021 WL 2870694, at *6 (W.D. Tex. July 8, 2021)). The Federal Circuit vacated the *Jenam* opinion on which Vivato relies and attributed error to this Court for negating the inconvenience party witnesses may suffer. *In re Google*, No. 2021-171, 2021 WL 4592280, at *4 (Fed. Cir. Oct. 6, 2021). The Federal Circuit rejects "the proposition that the convenience-to-the witness factor is attenuated when the witnesses are employees of the party calling them." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021). Accordingly, the Court typically accords party and nonparty witnesses equal weight.

Second, Vivato claims that Google's concerns with travel inconveniences "are not grounded in the reality of how Google litigates patent cases" because Google employees have testified remotely in Waco in the past. ECF No. 33 at 7. This argument is logical but the life of transfer law is not logic. The Federal Circuit has time and again rebuffed district courts for grounding the sources-of-proof factor in reality and, for example, tempering the weight accorded to the "location" of electronic documents that can be transmitted across the globe with great ease. *See, e.g.*, *In re Juniper*, 14 F.4th at 1321; *In re Google LLC*, No. 2022-140, 2022 WL 1613192, at *3 (Fed. Cir. May 23, 2022); *In re Apple Inc.*, No. 2021-181, 2021 U.S. App. LEXIS 33788, at *6 (Fed. Cir. Nov. 15, 2021). In step with this Luddite jurisprudence, the Court will not start appreciating advents in technology now. "[R]ecent developments," like the mainstreaming of remote testimony, will not "render this factor superfluous." *Volkswagen II*, 545 F.3d at 316. Accordingly, the Court rejects Vivato's argument.

Third, Vivato argues that, by testifying that *only* ▮▮▮▮▮▮ has knowledge of the design and functionality of the chips that implement the accused technology, Mr. Rope effectively conceded that Google's own personnel have no relevant knowledge. *See* ECF No. 33 at 7 (citing ECF No. 23-1 ¶ 8). The Court does not find Mr. Rope's testimony conclusive—at this early stage and contrary to the other testimony on the Rope Declaration—that only ▮▮▮▮▮▮ engineers have knowledge relevant to infringement and invalidity. And, indeed, Vivato does not contend, on its own accord, that Google engineers lack such relevant knowledge.

### b. Texas-based Google Personnel

Vivato argues that Google ignores relevant witnesses in this District. ECF No. 33 at 7–8. Vivato claims that, according to a Google Careers search, Google is hiring a Network Engineer in Austin, Texas to join the "Network Engineering Team" which operates "a network that provides

service to millions of Internet users." ECF No. 33-14 at 2–3. Vivato contends that this team likely has knowledge relevant to the Google Wi-Fi products and the IEEE 802.11ac functionalities at issue. ECF No. 33 at 8. The Court finds this argument too speculative. Vivato had an opportunity to take discovery and yet it adduces no evidence corroborating its supposition that Google's Austin-based team has knowledge relevant to this Action. The Court cannot credit such a speculative line of argument. *Cf. Logantree LP v. Apple Inc.*, No. 6:21-CV-00397-ADA, 2022 U.S. Dist. LEXIS 85164, at *20 (W.D. Tex. May 11, 2022) ("Gauging and articulating the relevance of a party's personnel to a particular case—especially personnel from a company the size of Apple—based only on vague LinkedIn profiles is a challenge.").

c.      Vivato Personnel

Vivato asks the Court to weigh Vivato personnel—and Vivato consultants—against transfer because, even though they do not work or reside in Texas, they "are all willing to attend trial" here, in Vivato's chosen venue. ECF No. 33 at 8. As a reminder, Vivato has its principal place of business in Venice, California. So Vivato proposes that this Court ignore a plaintiff's inconvenience just so long as the plaintiff is willing to too. Stated another way, the Court should simply accord weight to a plaintiff's chosen venue, regardless of how truly inconvenient it is to the plaintiff. But a plaintiff's choice of venue is already baked into the movant's burden. *See Volkswagen II*, 545 F.3d at 314 n.10 (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 127 S. Ct. 1184, 1191, 167 L. Ed. 2d 15 (2007)). Accordingly, the Court will not weigh the convenience of a plaintiff's witnesses against transfer under this factor merely because the plaintiff attests that travel to this District would not represent an inconvenience upon witnesses with no apparent connection to this District.

d.     Conclusion

Google named eleven willing witnesses with relevant knowledge in the NDCA while Vivato named none for which this District could be more convenient. The Court therefore finds that this factor strongly favors transfer.

2.     Availability of Compulsory Process

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). When "there are several witnesses located in the transferee forum and none in the transferor forum," this factor favors transfer. *In re Google*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021).

The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018); *see also In re Hulu, LLC,* No. 2021-142, 2021 U.S. App. LEXIS 22723, at *10 (Fed. Cir. Aug. 2, 2021) ("[W]here . . . the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness.").

Further, this Court cannot "discount" third-party entities having pertinent information in the transferee venue "just because individual employees were not identified." *In re Apple*, 2021 U.S. App. LEXIS 33788, at *8 (quoting *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020)).

Google's Motion claims that the nonparty witnesses with relevant knowledge are "almost entirely located outside of the WDTX." ECF No. 23 at 3.[1] It identifies six categories of nonparty witnesses. First, the Rope Declaration names Google's primary points of contact at ███████████ ██████████████████████████████████████ the manufacturers supplying Google with chips implementing the IEEE 802.11ac standard in some of the Accused Products. *See* ECF No. 23-1 ¶¶ 8, 14, 20. Google identified ███████████████ personnel by name. Relative to the Accused Wi-Fi Products, Google named ████████████████████████████████████████. *Id.* ¶ 8. Relative to the "Accused Pixel Phones," Google named a ████████████████████ ██████████████████████████████████████████. *Id.* ¶ 20. It also named ███████ personnel. With respect to the Accused Nest Video Products, Google identifies a ████████████████████████████████████████████████████████████████ ████. *Id.* ¶ 14.

Second, Google alleges that ███████████████████████, designed and provides Google the chips implementing MU-MIMO technology supported by the IEEE 802.11ac standard. ECF No. 23-1 ¶ 26. It does not, however, identify any ███████████ by name. Third,

---

[1] Vivato further argues that because Google "has not shown that any of these third-party witnesses, assuming they even have relevant testimony, are unwilling to attend trial" Google's Motion is "insufficient." ECF No. 33 at 9–10 (citing *Turner v. Cincinnati Ins. Co.*, No. 6:19-CV-642-ADA-JCM, 2020 WL 210809, at *3 (W.D. Tex. Jan. 14, 2020)). Yet the Federal Circuit has held that "the Fifth Circuit would recognize that where . . . the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness." *In re Hulu, LLC*, 2021 WL 3278194, at *4; *see also In re HP Inc.*, 2018 WL 4692486, at *3 (finding that such witnesses are "presumed to be unwilling").

Google relies on three named inventors of the patents-in-suit residing in California.[2] ECF No. 23 at 3. Fourth, Google claims that two prosecuting attorneys of the patents-in-suit reside in California. ECF No. 23 at 4. Fifth, Google notes that Vivato's former CEO, Ken Biba, resides in San Francisco. ECF No. 23 at 4. Vivato's Complaint alleges that he is one of "several key innovators in the wireless communication field." ECF No. 1 ¶ 11.

Sixth, Google points to Chris Thomas, Michael Haycox, and Ron Chaffee as living in California and having knowledge "about the valuation of Vivato's patent portfolio." The first two are both associated with Western Property Holdings, LLC, a company formed by investors associated with Vivato Networks, Inc.—an entity whose relationship to this case has not been made abundantly clear—and a related plaintiff in a case against one of Vivato Networks's creditors that the plaintiff initiated based on the creditor's allegedly low post-foreclosure sale of a patent related to the patents-in-suit. Mr. Chaffee was Vivato's CEO during that creditor lawsuit. ECF No. 23 at 5.

Vivato objects to most of these witnesses on the ground that Google has not established with a great degree of certainty where the potential witnesses live and the knowledge they have. ECF No. 33 at 9–10. The Court agrees in that it is not convinced that Messrs. Thomas, Haycox, and Chaffee have knowledge relevant to the valuation of the Asserted Patents merely because they have some nebulous association to legal entities connected to a creditor lawsuit related to the valuation of a patent not at issue in this Action.

---

2

The Court is also sympathetic to the argument that Google has not identified any particular ███ personnel residing in California. ████████████████████████████ ██████████████████████████. Google has not persuaded this Court that relevant ███ personnel reside in California ████████████████████. To the contrary, Google's failure to identify specific ████████████████████ ████████████████████████████████████████████ ██████ . ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████



Yet the Court will, based on the relevant declarations from Google, accord weight to California-based ████████████████████ , named inventors, prosecuting attorneys, and Mr. Biba.[3] The Court is satisfied that each has relevant knowledge and resides in California. Because they are based in California, the transferee court can compel their testimony at trial—this Court cannot.[4] As to those witnesses whose testimony this Court *can* compel, the Court identifies the named inventor whom Google concedes resides in this District. ECF No. 23 at 3. Vivato has not named any other unwilling witnesses in Texas. Given that, this factor weighs heavily in favor of transfer.

---

[3] In a related action, the Court found that an affidavit showed that Mr. Biba may be a willing witness. *See XR Commc'ns, LLC v. HP Inc.*, 2022 U.S. Dist. LEXIS 146975, at *10. Moving Mr. Biba from one factor to another would not affect the balance of either factor or the Court's ultimate conclusion.

[4] XR argues that the weight accorded to ████████ personnel should be attenuated because they could testify by video. ECF No. 33 at 10. Yet ████████████ are being evaluated under the compulsory-process factor and XR has not convinced the Court that it has the power to compel remote trial testimony from unwilling witnesses located beyond Texas's borders.

3.  Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv,* 2019 U.S. Dist. LEXIS 171102, at *5. This factor relates to the relative—not absolute—ease of access to non-witness evidence. *See In re Radmax*, 720 F.3d at 288; *In re Apple*, 979 F.3d at 1339. "[T]he movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple*, 979 F.3d at 1340; *In re Juniper*, 14 F.4th at 1321 ("We have held that the fact that some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer.").

The Fifth Circuit has held that, even in the context of electronic documents that can be accessed anywhere on earth, this factor is not superfluous. *See Volkswagen II*, 545 F.3d at 316; *In re Dish Network L.L.C.*, No. 2021-182, 2021 U.S. App. LEXIS 31759, at *6 (Fed. Cir. Oct. 21, 2021). Though having consistently characterized that holding as antiquated in the setting of a modern patent dispute, this Court will continue to analyze this factor with a focus on the location of: physical documents and other evidence; and the hardware storing the relevant electronic evidence. *See Def. Distributed v. Bruck*, 30 F.4th 414, 434 & n.25 (5th Cir. 2022) (giving weight to the location of servers hosting the electronic documents in dispute); *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 6-20-CV-00731-ADA, 2021 U.S. Dist. LEXIS 137400, at *7 & n.1 (W.D. Tex. July 22, 2021). The Federal Circuit has held, however, that it is error not to also consider: "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google*, 2021 U.S. App. LEXIS 33789, at *7; *see also Def. Distributed*, 30 F.4th at 434 & n.25 (considering, under this factor, where the "research, design, development, manufacturing, and publishing" of the allegedly

14

offending files occurred). Finally, evidence located at a party's office that is not a "place of regular business" may be discounted. *See In re Google*, 2022 WL 1613192, at *4.

The Court finds that this factor favors transfer. Google represents that "Google's technical, financial, and marketing documents relevant to the accused products are created and maintained by employees located in or near Google's Mountain View headquarters." ECF No. 23 at 9 (citing ECF No. 23-1 ¶¶ 12, 18, 24, 34). It further contends that "key third-party documentary evidence is located in California, such as ███████████████████ documents." *Id.* (citing ECF No. 23-1 ¶¶ 8, 14, 20, 26). Vivato does not endeavor to identify any competing evidence in or near this District. Instead, it endeavors to show how Google has not met its burden.

First, Vivato remarks how "this factor looks at where documents are *stored*—not where they are 'created and maintained.'" ECF No. 33 at 5. The Federal Circuit disagrees, having held it error to disregard: "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, LEXIS 33789, at *7.

Second, Vivato presumes that all of Google's documents are "available electronically and thus equally as accessible in this District as in the Northern District of California." ECF No. 33 at 5. In the same vein, Vivato represents that all of its documents "are available electronically and are available in this District." *Id.* These arguments are unavailing because the Federal Circuit has reaffirmed time and again that this factor considers the *relative* ease of access to sources of proof and, as such, district courts are essentially barred from considering the ease of transmission of electronic documents barring exceptional circumstances. *See In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022) (first citing *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *2 (Fed. Cir. Nov. 15, 2021), and then citing *In re Juniper*, 14 F.4th at 1321).

Third, Vivato notes how "Google has not identified a single document actually located, or even hosted, in NDCA, let alone any relevant source code located or hosted in NDCA." ECF No. 33 at 4. Vivato contends that "Google cannot rely [on] unspecified documents and witnesses to tip the scales in favor of transfer." ECF No. 33 at 5. The Court disagrees. In *In re Netflix, Inc.*, the Federal Circuit recently expressed satisfaction with the defendant's level of specificity when identifying sources of proof. No. 2022-110, 2022 WL 167470, at *3 (Fed. Cir. Jan. 19, 2022). There, the defendant submitted an affidavit stating that the defendant's source code was at the defendant's headquarters in the transferee venue, where the defendant's product and engineering teams were located, along with "any other documentation about the research, design, and development of" the accused technology. *Id.* The affidavit further recited that the defendant maintains financial documentation at that same headquarters, where the defendant's corporate decision-making takes place. *Id.*

This Court is satisfied that, like the defendant in *Netflix*, Google presents sufficiently specific testimony. The Rope Declaration states that "[d]ecisions related to Google's overall business are made by managers and other employees based in Northern California, including most significant engineering, sales, and marketing decisions related to the Accused Products." ECF No. 23-1 ¶ 5. It continues, remarking how Google personnel with knowledge about "technical, financial, and marketing aspects of the" accused products reside on the West Coast. ECF No. 23-1 ¶¶ 6, 12, 18, 24. It goes on to identify specific Google personnel, whom the Court recounted under the willing-witnesses factor. Mr. Rope further states that:



*Id.* ¶ 34. These statements suffice to establish that relevant technical, financial, and marketing evidence may be accessed with greater ease in the NDCA—where most of the named potential witnesses reside—than this District. Under the same logic, Mr. Rope's testimony regarding relevant ███████████████ witnesses in California, and those companies' design and development of the relevant chips, *id.* ¶¶ 8, 14, 20, 26, is sufficient to establish that sources of proof are subject to easier access in California than Texas.

Given that Google has shown that there is easier access to sources of proof in the NDCA, and because Vivato does not identify any evidence in or around this District, this factor strongly favors transfer.

### 4. Practical Problems

This court also considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer" but delay in already protracted litigation may account for some weight. *In re Radmax, Ltd.*, 720 F.3d at 289.

"Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs, LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "The interests of justice may be best served by transferring ancillary matters pending in other forums to the forum of the main action, particularly if the main action is complex." *Bank of Texas v. Computer Stat., Inc.*, 60 F.R.D. 43, 45 (S.D. Tex. 1973). "[T]he ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer." *In re Apple Inc.*, 979 F.3d at 1344. But district courts should not rely "on considerations of judicial economy arising after the filing of the lawsuit or the transfer

17

motion," such as, for example, suits filed in the transferor district after a request to transfer. *In re Netscout Sys.*, No. 2021-173, 2021 U.S. App. LEXIS 30500, at \*12 (Fed. Cir. Oct. 13, 2021). Further, "the mere co-pendency of infringement suits in a particular district" does not automatically tip transfer in one direction or the other. *Id.* at \*13.

There are multiple cases pending before this Court in which Vivato is asserting the same patents. ECF No. 33 at 11. "[T]he mere co-pendency" of cases "in a particular district [does not] automatically tip[] the balance in the non-movant's favor." *In re Apple*, 2021 U.S. App. LEXIS 33788, at \*11 (quoting *In re NetScout*, 2021 U.S. App. LEXIS 30500, at \*13). And when "suit[s] involve[] different defendants and different accused products," they are likely to involve "significantly different discovery, evidence, proceedings, and trial" and therefore "any 'incremental gains in keeping [the] case in the Western District of Texas' are insufficient 'to justify overriding the inconvenience to the parties and witnesses'" *Id.* (quoting *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021)). The Court finds that the private interest factors—and the local interest factor—greatly outmatch this factor.

Moreover, the Court questions the degree to which maintaining this Action here would serve judicial economy. In weighing this factor, this Court must "consider the presence of co-pending motions to transfer." *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-CV-00432-ADA, 2020 WL 4905809, at \*7 (W.D. Tex. Aug. 20, 2020); *see also In re Google Inc.*, No. 2017-107, 2017 WL 977038, at \*2 (Fed. Cir. Feb. 23, 2017). The defendants in Vivato's co-pending cases against HP, Amazon, Apple, Dell, and ASUSTek have either moved for transfer or sought leave to move for transfer. The Court has already transferred the HP case to the NDCA. *See XR Commc'ns, LLC v. HP Inc.*, Civil Action No. 6:21-CV-694-ADA, 2022 U.S. Dist. LEXIS 146975 (W.D. Tex. Aug. 17, 2022). Given these developments, judicial economy may be served regardless

18

of the outcome of this Motion. Accordingly, this factor is neutral (or at best slightly disfavors transfer).

### C.    Public Interest Factors

#### 1.    Court Congestion

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. Moreover, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

As it did in the related *XR Commc'ns, LLC v. HP Inc.* action, the Court finds this factor neutral. 2022 U.S. Dist. LEXIS 146975, at *19. The Federal Circuit has previously found that there are "no significant differences in caseload or time-to-trial statistics" between this District and the NDCA. *In re Juniper*, 14 F.4th at 1322. Moreover, this is the most speculative factor, *In re Genentech*, 566 F.3d at 1347, and the Federal Circuit has accorded it strikingly little weight in recent history.

#### 2.    Local Interests

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung*, 2 F.4th at 1380. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-4387-K, 2015 WL 13870507, at *4 (N.D. Tex. July 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La*

*Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and the events that gave rise to a suit.'" *In re Apple Inc.*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)).

The NDCA has a local interest in this Action and this District has none. Google alleges that it "was founded and maintains its headquarters and largest offices in the NDCA, designed the accused products there, and its personnel, documentary records, and ongoing activities relating to the accused products are primarily in the NDCA." ECF No. 23 at 12. This factor weighs "strongly in favor of transfer" when "the accused products were designed and developed in the transferee venue and are not related to [the defendant's] presence in Texas." *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *6 (Fed. Cir. Sept. 27, 2021). Google has a general presence in this District but this Court would clearly abuse its discretion in according *any* weight to it. *See In re Apple Inc.*, No. 2022-137, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022) ("The court's reliance on [in-district] offices, which lack such a connection to the locus of the events giving rise to the dispute, amounts to a clear abuse of discretion."). *But see In re Apple*, 979 F.3d at 1352 (Fed. Cir. 2020) (Moore, C.J., dissenting) ("Neither this court nor the Fifth Circuit has held that an accused infringer's general presence in a district is irrelevant to the district's local interest in resolving the case." (citing *In re Acer*, 626 F.3d at 1255–56)). Accordingly, this factor favors transfer.

### 3. Familiarity of the Forum with Law-At-Issue

Google concedes that this factor is neutral and, in response, Vivato argues that that concession, coupled with Google's burden under § 1404(a), means this factor necessarily weighs against transfer. The Court rejects this argument outright. Vivato identifies no reasoned principle or authority supporting its position. This factor is neutral.

4.     <u>Conflict of Laws</u>

Google contends this factor is neutral. ECF 23 at 14. Vivato offers the same illogical argument from the previous factor; the Court rejects it out of hand. This factor is neutral.

## IV. CONCLUSION

Having considered the private and public interest factors, the Court's conclusion for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Cost of attendance for willing witnesses | Weighs strongly in favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Weighs strongly in favor of transfer |
| The relative ease of access to sources of proof | Weighs strongly in favor of transfer |
| All other practical problems that make the trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Weighs in favor of transfer |
| Familiarity of the forum with the law that will govern the case | Neutral |
| Problems associated with conflict of law | Neutral |

In establishing that the first three factors weigh strongly in favor of transfer and the local interest factor favors transfer while no other factor weighs against, Google has established that the NDCA is a clearly more convenient venue. Google's Motion is therefore **GRANTED**. The Court **ORDERS** that the above-captioned case is transferred to NDCA.

SIGNED this 18th day of August, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE